J-S34007-18

2018 PA Super 279

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :

            v.                           :

BENNIE D. GRAVES                 :

        Appellant          :   No. 1104 WDA 2017

Appeal from the PCRA Order July 10, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001310-1979,
CP-02-CR-0001311-1979

BEFORE:   BOWES, J., STABILE, J., and STRASSBURGER*, J.

OPINION BY BOWES, J.:                   **FILED OCTOBER 16, 2018**

Bennie D. Graves appeals the July 10, 2017 order dismissing his PCRA

petition as untimely. After thorough review, we affirm.

We provide excerpts of the trial court's recitation of the facts pertinent

to our review:

> At approximately 11:00 p.m. on February 16, 1979, Yvonne
> Weston, before leaving her home for work, entrusted the care of
> her two children, ten-year[-] old [female] and eleven-year[-] old
> male, to her step-brother, Bennie Graves, the [Appellant], then
> living as a boarder in her house. [Appellant] spent the evening
> drinking beer, smoking marijuana and listening to the radio with
> his step-brother, Daniel Anderson, while the children slept in the
> upstairs bedroom. When Anderson left the house at 4:45 a.m.,
> he had no reason to suspect that the children were not asleep in
> their upstairs bedroom.
>
> Upon returning home at 7:10 a.m. the next morning, Mrs. Weston
> discovered the bodies of her children lying upon the living room
> floor. It was later determined that each had been strangled to
> death. She found the [Appellant] to be missing from the house.

_____
*   Retired Senior Judge assigned to the Superior Court.

While her living and dining room were in disarray, Mrs. Weston found nothing missing and detected no signs of a forced entry.

[The female child] was lying supine, with her legs spread apart, clothed only in an undershirt. Her pajamas and her underpants, which she had been wearing when she went to bed, were found folded upon a nearby table. A later examination revealed the presence of pubic hairs upon [her] legs and vaginal area which, under microscopic examination, exhibited characteristics consistent with a sample of [Appellant's] hair, but inconsistent with samples taken from the two children. [The male child] was found fully clothed in pajamas and socks. [Appellant's] bathrobe, which he had been wearing earlier that evening, was discovered to be spotted in several places with human blood. Upon examination, it was found to be blood of the type consistent with the children's blood type but inconsistent with that of [Appellant].

        . . . .

. . . Appellant, at 9:20 a.m., told the police that after Daniel Anderson left the Weston home he fell asleep on the living room floor but was awakened sometime later when three black males, one of whom was armed, entered and demanded to know of the whereabouts of Butch Anderson, Mrs. Weston's brother. He said that the men then brought the children downstairs and slapped them in an apparent effort to induce [Appellant] to tell them where Butch was. [Appellant] tried to assist the children, he said, was punched for his effort and then, after agreeing to take them to Butch, he was able to escape from them and run to the home of a female friend.

After being informed of his *Miranda* rights, [Appellant] expressed a willingness to cooperate and to answer questions and gave an exculpatory statement. After being informed of his rights, he surrendered hair and saliva samples, clipped his fingernails, and submitted to having impressions made of his fingernails. . . . While in police custody it was noticed that [Appellant] had several fresh scratches on his shoulder which [Appellant] explained were inflicted by his girlfriend during a sexual encounter. Subsequent investigation revealed the presence of dried blood beneath [the female child's] fingernails.

Trial Court Opinion, 12/23/80, at 4-6 (footnotes and references to trial transcript omitted).

Appellant was charged with first-degree murder, third-degree murder, and voluntary manslaughter in each of two criminal informations. A jury trial commenced on January 16, 1980. At trial, the Commonwealth offered expert testimony from Dr. Michael N. Sobel, an orthodontist, Dr. Robert Levine, a criminalist, Dr. Lowell J. Levine, a forensic dentist, and Dr. Homer R. Campbell, Jr., a dentist board-certified in forensic odontology, to link Appellant's fingernails to the scratches on the male child's neck. Jean Chelen, a criminalist, testified regarding the consistency of the characteristics of pubic hair found on the female victim and the pubic hair taken from Appellant, the victims and the victims' mother.

Appellant offered expert forensic testimony from James M. Parker, Ph.D. Dr. Parker had formerly been employed as a criminalist in the Allegheny County crime laboratory, and taught forensic science at the University of Pittsburgh. His expertise was in firearms, tool marks, and chemistry. In his opinion, the comparison of fingernails and fingernail markings was not generally accepted in forensic science. After examining the wounds at issue herein, he could not state with a reasonable degree of scientific certainty that they were caused by fingernails, or specifically, Appellant's fingernails.

The jury found Appellant guilty of first-degree murder in the death of the female child, and third-degree murder of the male child. After additional

testimony, the jury by separate verdict imposed the death penalty. On December 23, 1980, the court vacated the death sentence and, on January 23, 1981, sentenced Appellant to a term of ten to twenty years imprisonment for third-degree murder, and a consecutive term of life in prison for the first-degree murder.

Appellant's judgment of sentence was affirmed on direct appeal. *Commonwealth v. Graves*, 456 A.2d 561 (Pa.Super. 1983). He filed a petition for allowance of appeal, but was granted leave to withdraw it on May 13, 1983. In the meantime, Appellant filed a PCHA petition on April 6, 1983, counsel was appointed, and the petition was subsequently dismissed. No appeal was taken. Appellant filed a second petition for collateral relief in 1994, and counsel was appointed. Counsel filed a *Turner/Finley* no-merit letter and moved to withdraw, which the court granted. Appellant's PCRA petition was dismissed on August 8, 1997, and no appeal was filed.

Appellant's third PCRA petition, which was filed on March 4, 2008, was dismissed as untimely. This Court affirmed that order on July 19, 2009. *Commonwealth v. Graves*, 981 A.2d 919 (Pa.Super. 2009) (unpublished memorandum). After an unsuccessful *habeas* petition in federal court, Appellant filed a fourth PCRA petition on May 4, 2017, which is the subject of the instant appeal. The Commonwealth filed an answer, the court issued Rule 907 notice of its intent to dismiss the PCRA petition, and dismissed the petition on July 11, 2017.

Appellant timely filed the within appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors. The PCRA court filed its Rule 1925(a) opinion, and the matter is ripe for our review.

Appellant presents three questions for our review:

[1] Did the PCRA court [err and] abuse [its] discretion in dismissing [the] petition when evidence presented establish[ed] [an] exception to the timeliness requirement?

[2] Did the PCRA court [err] and abuse [its] discretion in failing to address meritorious claims presented to the court for review?

[3] Was Appellant denied due process of law from the court below during proceedings?

Appellant's brief at iv.

"Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." ***Commonwealth v. Chmiel***, 173 A.3d 617, 624-25 (Pa. 2017) (quoting ***Commonwealth v. Koehler***, 36 A.3d 121, 131 (Pa. 2012)). "Our review of questions of law is *de novo*." ***Id***. at 625. "Our scope of review is limited to the PCRA court's findings and the evidence of record, viewed in the light most favorable to the Commonwealth as the prevailing party." ***Id***.

Before we can address the merits of the issues raised, we must determine whether Appellant has established that his PCRA petition was timely filed, as the time-bar is jurisdictional. 42 Pa.C.S. § 9545(b). "A PCRA petition, including a second or subsequent petition, shall be filed within one year of the

date the underlying judgment becomes final." ***Commonwealth v. Brown***,

111 A.3d 171, 175 (Pa.Super. 2015). "A judgment of sentence becomes final

at the conclusion of direct review, including discretionary review in the

Supreme Court of the United States and the Supreme Court of Pennsylvania,

or at the expiration of time for seeking the review. 42 Pa.C.S. § 9545(b)(3)."

***Commonwealth v. Hernandez***, 79 A.3d 649, 650 (Pa.Super. 2013).

The petition is patently untimely. Thus, we have no jurisdiction to

entertain it unless Appellant pled and proved one of the three exceptions to

the PCRA's one-year time limitation set forth in § 9545:

> (i)     the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Moreover, in order to invoke one of these

exceptions, the petition must be filed within sixty days of the date the claim

could first have been presented. ***Id***. at § 9545(b)(2).

Appellant maintains that his petition is timely filed under the exception

for newly-discovered facts. He avers that he filed the petition within sixty

days of his receipt of the National Academy of Science ("NAS") Report of 2009, which he obtained from the prison librarian on March 4, 2017. The new fact gleaned from that report, according to Appellant, was that "microscopic [hair] analysis studies alone are of limited probative value[,]" and a finding of "no scientific support for the use of hair comparison for individualization in the absence of nuclear DNA."[1] Appellant's brief at 3. In essence, he contends that this fact was unknown to him until then, and could not have been ascertained by the exercise of due diligence. He also relies upon the Supreme Court's recent decision in *Commonwealth v. Burton*, 158 A.3d 618, 637-38 (Pa. 2016), in which the Court held that "*pro se* prisoners are not constructively charged with knowledge of materials in the public domain for purposes of due diligence."

The Commonwealth cites *Commonwealth v. Edmiston*, 65 A.3d 339, 352 (Pa. 2013), for the proposition that facts unknown to the petitioner for purposes of the exception cannot be information previously known and a matter of public record, but merely presented through a newly-discovered source. It maintains that Appellant's alleged newly-discovered fact, the inability to link hair samples to a particular person through microscopic

_____

[1] Appellant also alleges, and the record supports, that the NAS report questioned the validity of forensic odontology, *i.e.*, bite mark comparison, for positive identification. He did not allege, however, that this was a newly-discovered fact gleaned from the NAS report for purposes of the timeliness exception.

analysis, was known in the 1970s. The NAS report, according to the Commonwealth, was merely "a compilation and review of decades of studies in the forensic sciences." Commonwealth brief at 20. Those studies dated from 1974 through 2007. The NAS report was thus a new source for previously known facts.

The Commonwealth points out that in **Edmiston**, our Supreme Court determined that the 2009 NAS Report was not a newly-discovered fact in 2013 for purposes of the exception to the PCRA time-bar. The PCRA court herein relied upon that holding in concluding that, "it stands to reason that the same report is not new evidence in 2017." PCRA Court Opinion, 10/17/17, at 4.

The Commonwealth also argues that Appellant admittedly received a copy of a Washington Post article from a fellow inmate in 2016, which referenced an April 20, 2015 FBI press release, that contained facts held to be newly-discovered in **Chmiel**, **supra**. He also cited in his PCRA petition the case of **U.S. v. John Flick**, 2016 WL 80669 (W.D. Pa. Jan. 7, 2016), in which a federal district court determined that an expert's testimony regarding hair samples "exceeded the limits of science."[2] However, the Commonwealth points out that Appellant did not disclose when he first learned of the

---

[2] Following the Department of Justice review, the U.S. Attorney in the **Flick** case was notified that the expert's report in the case contained a number of errors, rendering the report invalid. After the government agreed that the sentence should be vacated, the court so ordered and resentenced Mr. Flick to a shorter term of imprisonment, with credit for time served, pursuant to 28 U.S.C. § 2255, which does not have a time limitation such as the PCRA.

Washington Post article or the *Flick* decision, or rely upon those publications as his newly-discovered fact from which he had sixty days to file a PCRA petition. Instead, he calculates the sixty-day period in which to file a PCRA petition asserting a timeliness exception from March 4, 2017, the date when he received the NAS report from the librarian, and maintains that the petition is timely under the § 9545(b)(1)(ii) exception. He offers no explanation why he could not have filed a petition within sixty days of his receipt of a copy of the Washington Post article or the FBI press release, which he states occurred in 2016.[3]

Although Appellant does not direct us to the Supreme Court's decision in *Chmiel*, *supra*, the Commonwealth forthrightly addresses it. One month after the PCRA court issued its opinion in this case, the Supreme Court decided *Chmiel*. Chmiel filed a PCRA petition alleging that his conviction and death sentence rested upon unreliable hair comparison evidence in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. Chmiel asserted that his PCRA petition challenging evidence of hair analysis was timely under the

_____

[3] In support of his claim that the NAS report included new facts, Appellant points to the 2012 Washington Post article that he admittedly possessed in 2016, and which reported that the FBI knew that its flawed forensic hair analysis "may have led to convictions of potentially innocent people." Appellant's brief at 4. Thus, by Appellant's own admission, he knew in 2016 of the newly-discovered fact recognized in *Chmiel*, but failed to file the within petition within sixty days of acquiring that knowledge.

exception for newly-discovered facts. The alleged new fact was the April 20, 2015 FBI press release, which acknowledged that testimony of its analysts regarding hair analysis in the past twenty-five years was erroneous in most cases. Furthermore, the FBI had trained many state and local forensic examiners in the flawed language used to express their conclusions regarding hair analysis. Chmiel asserted further that the Pennsylvania State Police expert who testified in his case was trained by the FBI and provided the same scientifically unsupportable testimony that the FBI press release discredited.[4] He filed a PCRA petition within sixty days of the FBI press release.

The PCRA court in **Chmiel** relied upon **Edmiston** in rejecting Chmiel's reliance upon the FBI press release as a newly-discovered fact, and dismissed the petition as untimely. The court equated the FBI press release with the NAS report as merely referring to facts that had been in the public domain since 1974, and that could have been discovered earlier with the exercise of reasonable diligence. Our Supreme Court reversed and remanded for further proceedings. It recognized that "[t]here were two newly-discovered facts as a result of the FBI press release and the Washington Post article" upon which Chmiel's claim was predicated. **Chmiel**, **supra** at 625. "First, the FBI publicly admitted that the testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of

_____

[4] Chmiel also asserted that there were exceptional circumstances to justify deposing the expert pursuant to Pa.R.Crim.P. 902(E)(1).

cases." *Id*. Our Supreme Court called it a "revelation," as it "was the first time the FBI acknowledged that its microscopic hair analysts committed widespread, systemic error by grossly exaggerating the significance of their data in criminal trials." *Id*. The second newly-discovered fact was the acknowledgement by the FBI in the press release that it "had trained many state and local analysts to provide the same scientifically flawed opinions in state criminal trials." *Id*. The analyst in Chmiel's case was trained by the FBI, and thus, the Court reasoned that the expert's trial testimony "may have exceeded the limits of science and overstated to the jury the significance of the microscopic hair analysis."[5] *Id*.

The Commonwealth contends that *Chmiel* does not invalidate the PCRA court's holding herein. We agree. Appellant's alleged newly-discovered fact in the instant case was the 2009 NAS report, which the *Edmiston* Court held was not a new fact in 2013. Had Appellant asserted the Washington Post article or the FBI press release as the new fact for purposes of the time-bar in a PCRA petition filed within sixty days of that publication, this case would be governed by *Chmiel*, and we would reverse and remand for further proceedings. However, despite acquiring knowledge of the 2015 FBI press release and Washington Post article sometime in 2016, Appellant inexplicably

---

[5] The Court ruled that, "[t]he FBI's repudiation and disclosure about its role in training state and local forensic examiners satisfies Section 9545(b)(1)(ii), and entitles Chmiel to a merits determination of his underlying claim." *Commonwealth v. Chmiel*, 173 A.3d 617, 626 (Pa. 2017).

failed to file a PCRA petition within sixty days alleging the newly-discovered facts contained therein as the basis for the timeliness exception. Since the alleged new fact in the NAS report is not new,[6] the instant PCRA petition filed within sixty days of Appellant's 2017 receipt of that report is not timely.

Thus, **Edmiston**, not **Chmiel**, controls our decision.[7] Appellant's petition filed sixty days after his receipt of the NAS report is untimely, and no relief is due.

_____

[6] The Commonwealth maintains that the NAS report impugned the reliability of microscopic hair analysis to positively identify a particular hair as being from a specific individual. It contends that the NAS article did not cast doubt on the hair analysis conducted in the instant case, nor was it used for purposes of a positive identification. We concur with that assessment. The report did not contain the type of concessions from law enforcement that were contained in the FBI press release and reported in the Washington Post article. Specifically, the NAS report did not contain the results of the FBI's review of its own files and its conclusion that in ninety percent of the cases prior to 2000, microscopy expert testimony was flawed, which was a newly-discovered fact recognized in **Chmiel**.

[7] Edmiston subsequently obtained relief when he filed a subsequent PCRA petition in Clearfield County on June 17, 2015, (within sixty days of the April 20, 2015 FBI press release), in which he asserted that his conviction and sentence were based upon flawed hair analysis and improper expert testimony from a Pennsylvania State Police criminalist, who had been trained by the FBI. He asserted therein that the FBI press release contained a newly-discovered fact that rendered his petition timely under § 9545(b)(i)(ii). The PCRA court dismissed the petition as untimely on August 12, 2016. A panel of this Court reversed after applying the Supreme Court decision in **Commonwealth v. Chmiel**, 173 A.3d 617 (Pa. 2017), as dispositive. **See Commonwealth v. Edmiston**, 2018 WL 419069 (Pa.Super. 2018) (unpublished memorandum). Edmiston apparently filed a similar PCRA petition in Cambria County, which was dismissed on July 18, 2016. He appealed that order, and the Supreme Court reversed on January 18, 2018, based on **Chmiel**. **See Commonwealth v. Edmiston**, 179 A.3d 447 (Pa. 2018) (_per curiam_ order).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/16/2018