J-S28045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANGEL NATAL :
:
Appellant : No. 1960 EDA 2020

Appeal from the PCRA Order Entered October 16, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004656-2015

BEFORE: BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: Filed: October 13, 2021

Angel Natal (Natal) appeals from the October 16, 2020 order of the

Court of Common Pleas of Philadelphia County (PCRA court) dismissing his

petition filed pursuant to the Post-Conviction Relief Act (PCRA).[1] We affirm.

**I.**

The PCRA court set forth the facts of this case as follows:

G.F. was 13 years old when [Natal] sexually assaulted her. She
was 15 years old when she testified at trial. In February of 2015,
G.F. lived in a house in Philadelphia with her mother, stepfather,
and siblings. At that time, [Natal]—G.F.'s stepbrother—also lived
there.

On February 14, 2015, G.F. and her family, including [Natal], went
out to dinner at Applebee's. Upon returning home, G.F. remained

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 et seq.

downstairs in the living room, while the rest of her family went upstairs to sleep. G.F. eventually fell asleep while watching a movie on the couch. At some point, she awoke to a sharp pain. G.F. described the pain as "burning and tearing, something ripping." G.F. also saw [Natal] on top of her with his pants down and his penis inside of her vagina. She was unable to push [Natal] away because he was holding her wrists down. [Natal] eventually shifted his body, allowing G.F. to raise her left leg and push him onto the floor. At this time, G.F. noticed that he was wearing a condom because his penis appeared clear and shiny. She also observed something white inside of the condom. After he pulled up his pants, [Natal] stumbled into the kitchen and then came back and went upstairs.

The following morning, G.F.'s mother, Sandra DeJesus, noticed two half-dollar sized hickeys on G.F.'s collarbone. When Ms. DeJesus began asking questions, G.F. cried and would not look at her. Ms. DeJesus went downstairs and tried to wake up [Natal]. She yelled at G.F., asking her what was going on. Ms. DeJesus then walked to the kitchen to throw away trash. When a napkin fell out of the trashcan, Ms. DeJesus picked it up and observed a used condom wrapped inside. She proceeded to scream at [Natal] and ask him what happened. [Natal] repeatedly said, "I'm sorry."

G.F. ultimately disclosed the assault to Ms. DeJesus. G.F. explained that she was asleep when she awoke to a pain and saw [Natal] on top of her. She further described [Natal] "grabbing on her arms, pulling her down" and being "inside of her." G.F. did not want to go to the police or a doctor because she was afraid.

Several weeks later, G.F.'s father took her to Saint Christopher's Hospital because she was experiencing stomach pains. At the hospital, G.F. again disclosed the assault. However, G.F. did not describe "everything" but rather only the "important part." The police arrived at the hospital and spoke to G.F. The hospital then performed tests and diagnosed G.F. with a urinary tract infection. G.F. also spoke to the Department of Human Services ("DHS") and was interviewed by the Philadelphia Children's Alliance ("PCA").

Nolita Martin,[1] [Natal's] sister, testified on behalf of the defense. Ms. Martin testified that she attended the Applebee's dinner with her infant son. The following day, she received a telephone call from Ms. DeJesus between 11:00 a.m. and 12:00 p.m. Ms. Martin

was told that [Natal] "had done something wrong, and he had to leave." When she arrived at the house, Ms. Martin spoke to G.F.'s parents. Ms. DeJesus told her that [Natal] raped G.F. Ms. Martin asked for proof and was told about the condom in the trash can. She dug through the trash but was unable to find the condom.

> [1]Ms. Martin also goes by the names Nolita Cambose and Zio.

Ms. Martin then spoke to G.F. privately in her bedroom. According to Ms. Martin, G.F. appeared "scared because her mom was mad at her" and was being punished because "she didn't want to tell her mom if [Natal] had done it or didn't do it." She also described G.F.'s demeanor as "sad." During this conversation, Ms. Martin repeatedly asked G.F. whether [Natal] had touched her. G.F. responded, "no," and explained that she "would never say that about [Natal] because [she] love[d] him as a brother."

[Natal] also testified in his own defense. [Natal] testified that he was not living with G.F.'s family at the time but slept over at the house after the Applebee's dinner. [Natal] fell asleep on the couch and awoke the following morning to Ms. DeJesus "snapping." Ms. DeJesus questioned him about the hickeys on G.F.'s neck, and [Natal] explained that G.F. told him they were from a girlfriend. [Natal] testified that he and G.F. were "really close" and that he "look[ed] at her like [his] sister."

During cross-examination, [Natal] agreed that he saw the half-dollar sized hickeys on G.F.'s neck that Ms. DeJesus described. He also initially agreed that G.F. did not have the hickeys on her neck at dinner the night before. However, [Natal] then stated that G.F. did not have any hickeys at all.

\*\*\*

During cross-examination [of G.F.], trial counsel pointed out that the description of the events given by G.F. at Saint Christopher's Hospital differed from her trial testimony. Trial counsel, relying on G.F.'s medical records, recited the following:

> [P]atient also reports sexual assault on 2/13/2015. The family went out to dinner at Applebee's that night. She feel [sic] asleep on the couch and awoken [sic] in the middle of the night to find her 22-year-old stepbrother,

> [Natal], on top of her, touching her thighs and "everywhere."
>
> She noted that he seemed like he was drunk. She told him to get off her, which he did. But then got on top of her again. This time he tried to pull her pants off so she kicked him off, ran up to her room and locked herself in her room.

N.T. 10/12/2016, at 62-63. However, G.F. testified that she did not recall providing that account. Rather, she recalled telling the doctor or nurse that she awoke to find [Natal's] penis inside of her vagina.

During an interview with DHS, G.F. stated that [Natal] held her wrists down, placed his penis inside of her vagina, and left hickeys on her neck. She also described the pain she experienced as feelings of "ripping" and "stinging."

Finally, G.F. attended a PCA interview on March 30, 2015, at which time she again described waking up to find [Natal]'s penis inside of her vagina.

\*\*\*

The final Commonwealth witness to testify was Christina Donnian, a DHS employee assigned to a specialty unit for sexual abuse. Ms. Donnian had an opportunity to speak with G.F. at her home and later to observe her PCA interview. According to Ms. Donnian, those two interviews were substantially the same. Furthermore, she described G.F. as consistent throughout the investigation.

PCRA Court Opinion, 3/25/21, at 1-4, 7-9 (citations omitted).

Following a non-jury trial, Natal was found guilty of statutory sexual assault, sexual assault, corruption of minors, indecent assault and two counts

of rape.[2]  He was sentenced to 6 to 15 years of incarceration to be followed by 15 years of probation.

Natal filed a timely direct appeal raising a single issue:  whether his conviction for indecent assault should merge for sentencing purposes with his conviction for rape.  *See Commonwealth v. Natal*, 876 EDA 2017, at *2 (Pa. Super. May 9, 2018) (unpublished memorandum).  We concluded that it did and vacated his conviction for indecent assault but declined to remand for resentencing because our disposition did not upset the sentencing scheme. *Id.* at 8.  The judgment was entered and jurisdiction was relinquished on May 9, 2018.  The docket sheet from his direct appeal reveals that the record was remitted to the trial court on June 25, 2018.  *Id.* (docket sheet).  Natal did not file a petition for allowance of appeal in the Supreme Court.

No further action was taken until February 1, 2019, when direct appeal counsel filed a *praecipe* to be removed as counsel in the Supreme Court.  *See Commonwealth v. Natal*, 10 EM 2019 (Pa. March 29, 2019) (docket sheet). Neither the docket sheet nor the certified record reveal what precipitated this filing.  On March 29, 2019, the Supreme Court remanded the case to the trial court to determine whether counsel should be permitted to withdraw.  *Id.* Additionally, the order stated:  "If present counsel is permitted to withdraw,

---

[2]  18 Pa.C.S. §§ 3122.1(a)(2), 3124.1, 6301(a)(1)(i), 3126(a)(2) & 3121(a)(1), (3).

the court is DIRECTED to resolve any issues relative to Angel Natal being appointed counsel or granted leave to proceed *pro se*." ***Id.*** (per curiam).

On April 30, 2019, the trial court granted direct appeal counsel's motion to withdraw and appointed new counsel "for appeal purposes." Order, 4/30/19. On May 17, 2019, newly-appointed appellate counsel filed a petition for leave to file petition for allowance of appeal *nunc pro tunc* in the Supreme Court. ***See Commonwealth v. Natal***, 49 EM 2019 (Pa. July 15, 2019) (docket sheet). The Supreme Court denied the petition on July 15, 2019. ***Id.***

On October 2, 2019, Natal filed the instant *pro se* PCRA petition and did not plead any exception to the PCRA's jurisdictional time-bar. The PCRA court appointed counsel who filed an amended petition on February 18, 2020. In his memorandum in support of the amended petition, PCRA counsel set forth the above procedural history and asserted that Natal had until October 15, 2020, to file a first timely PCRA petition.[3] Memorandum of Law in Support of Amended Petition for Relief Pursuant to the Post-Conviction Relief Act, 2/18/2020, at 10-11. In the alternative, the memorandum asserted:

> If the Commonwealth contends that the PCRA is untimely filed, [Natal] claims abandonment by counsel.[1] His attorney abandoned [Natal] during the appeal process to the Supreme Court. He filed a motion to withdraw from representation on February 1, 2019

---

[3] This date was one year and 90 days after our Supreme Court denied the petition for leave to file petition for allowance of appeal *nunc pro tunc*, or one year from the expiration of time for Natal to appeal that decision to the United States Supreme Court. ***See*** U.S. Sup. Ct. R. 13; 42 Pa.C.S. § 9545(b).

and no appeal brief was filed. Additionally, the trial court never appointed new counsel until April 30, 2019.

> [1]***Commonwealth v. Williamson***, 21 A.3d 236 ([Pa. Super.] 2011) allows a defendant to obtain *nunc pro tunc* relief under the standard of newly discovered evidence if a defendant has been abandoned by counsel in not filing a timely appeal.

***Id.*** at 11 (cleaned up).

Natal raised ineffectiveness claims in his petition challenging counsel's failure to file a post-sentence motion challenging the weight of the evidence and the discretionary aspects of the sentence, failure to call certain witnesses at trial, and failure to appeal the denial of a pre-trial motion to introduce evidence of the victim's prior sexual conduct. In support of the third claim, counsel attached Natal's *pro se* certification describing the testimony of the omitted witnesses and written statements from the witnesses.

The Commonwealth did not argue that the petition was untimely and only addressed the merits of Natal's claims in its motion to dismiss. ***See*** Motion to Dismiss, 6/25/20, at 5-17. The PCRA court ultimately dismissed the petition as meritless without a hearing. ***See*** Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907, 9/10/20; Order Dismissing Post-Conviction Relief Act Petition, 10/16/20. Natal timely appealed and he and the PCRA court have complied with Pa. R.A.P. 1925.

**II.**

We first address the timeliness of Natal's petition as it implicates our jurisdiction over the merits of his appeal.[4] "A PCRA petition, including a second and subsequent petition, shall be filed within one year of the date the underlying judgment becomes final." ***Commonwealth v. Graves***, 197 A.3d 1182, 1185 (Pa. Super. 2018) (citation omitted); ***see also*** 42 Pa.C.S. § 9545(b)(1). Because the timeliness requirements of the PCRA are jurisdictional, no court may consider the merits of an untimely petition. ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

If an appellant wishes to pursue further review after his case is disposed of in this Court, he must file a petition for allowance of appeal in our Supreme Court within 30 days. ***See*** Pa.R.A.P. 1113(A). If no petition for allowance of appeal is filed, the judgment of sentence becomes final after the 30-day period

---

[4] Whether a PCRA petition is timely filed is a question of law over which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Taylor***, 65 A.3d 462, 468 (Pa. Super. 2013) (citations omitted). This court may address the timeliness of a PCRA petition *sua sponte* as timeliness implicates our jurisdiction over the case. ***Commonwealth v. Gandy***, 38 A.3d 899, 902 (Pa. Super. 2012).

for doing so has expired.  42 Pa.C.S. § 9545(b)(3).  An untimely petition for allowance of appeal does not alter the date on which the judgment of sentence became final.  **See Commonwealth v. Hutchins**, 760 A.2d 50, 54 (Pa. Super. 2000).  An appellant who does not file a timely petition for allowance of appeal must have his appeal rights reinstated *nunc pro tunc* in order to extend the date on which his judgment of sentence became final. **Commonwealth v. Karanicolas**, 836 A.2d 940, 945 (Pa. Super. 2003).

Here, Natal filed a petition for leave to file a petition for allowance of appeal *nunc pro tunc* in May 2019.  The Supreme Court denied leave to file the petition in July 2019, which was over a year after this Court disposed of his direct appeal.  No petition for allowance of appeal was ever filed, timely or otherwise, and Natal was not granted *nunc pro tunc* relief by any court to file an untimely petition.  Under the plain language of the PCRA, Natal's judgment of sentence became final on June 8, 2018, which was the date on which the time for filing a petition for allowance of appeal expired.  **See** 42 Pa.C.S. § 9545(b)(3); **Hutchins**, **supra**.

Thus, Natal had until June 10, 2019,[5] to file his petition and the instant petition filed October 2, 2019, is patently untimely.  As a result, Natal must

---

[5] The 365th day from when Natal's judgment of sentence became final fell on Saturday, June 8, 2019.  Natal had until the next business day, or Monday, June 10, 2019, to timely file his petition.  **See** 1 Pa.C.S. § 1908 ("Whenever the last day of any [time period] shall fall on Saturday or Sunday, or on any
*(Footnote Continued Next Page)*

plead and prove one of the exceptions to the PCRA's timeliness requirements. 42 Pa.C.S. § 9545(b)(1)(i)-(iii) (outlining exceptions to the jurisdictional time-bar based on interference by government officials, newly-discovered facts or newly-recognized constitutional rights). In addition, he must present a claimed exception within one year of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

In the PCRA court, Natal cited *Commonwealth v. Williamson*, 21 A.3d 236 (Pa. Super. 2011), in support of his assertion that he was abandoned by direct appeal counsel following the conclusion of his direct appeal in this Court. In *Williamson*, this Court held that failure to file a petition for allowance of appeal in PCRA proceedings constituted ineffective assistance of counsel that completely deprives an appellant of further appellate review. *Id.* at 241-42. We concluded that failure to file the petition could fulfill the newly-discovered fact exception to the jurisdictional time-bar if the petitioner could prove the elements of that exception. *Id.* Namely, a petitioner invoking the newly-discovered fact exception must prove that "(1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221,

---

day made a legal holiday. . . such day shall be omitted from the computation.").

227 (Pa. 2016). He must also bring his claim within one year of the time the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Here, Natal alleged in his memorandum in support of his amended petition that he was abandoned by direct appeal counsel, who failed to file a timely petition for allowance of appeal in the Supreme Court. Nothing in the certified record reveals why direct appeal counsel filed his *praecipe* to withdraw in the Supreme Court on February 1, 2019, when no appeal was pending at that time and the judgment of sentence had become final months earlier.[6] Natal's petition did not state when he became aware of direct appeal counsel's failure to file the petition. However, the trial court appointed appellate counsel for Natal on April 30, 2019, who filed a petition for leave to file a petition for allowance of appeal in the Supreme Court on May 17, 2019. The petition was then denied on July 15, 2019, or 35 days after the deadline for filing a first timely PCRA petition expired on June 10, 2019. Natal filed his *pro se* PCRA petition 79 days later, on October 2, 2019.

Because Natal was represented by counsel when the time for filing a PCRA petition expired, we conclude that his ineffective assistance of counsel

---

[6] Natal was granted relief on the sole issue he raised in his direct appeal. ***Natal***, 876 EDA 2017, at *2. However, we acknowledge that there are certain non-waivable issues such as a challenge to the legality of a sentence that may be raised for the first time on appeal or in a petition for allowance of appeal in the Supreme Court. ***See, e.g.***, ***Commonwealth v. Brown***, 71 A.3d 1009, 1016 (Pa. Super. 2013) (citing ***Commonwealth v. Peterson***, 67 A.3d 789 (Pa. 2013)).

and abandonment claim has merit. At that point, counsel had sought leave to file a petition for allowance of appeal *nunc pro tunc* but relief had not been granted or denied. As a result, the date on which Natal's judgment of sentence became final had not been altered, **see Hutchins**, **supra**, and counsel did not file a PCRA petition to preserve Natal's right to pursue collateral relief.[7] When counsel's ineffectiveness in missing the deadline to file a timely PCRA petition causes the petitioner to be completely deprived of collateral review, that ineffectiveness can constitute a newly-discovered fact for the purposes of the jurisdictional time-bar. **See Commonwealth v. Peterson**, 192 A.3d 1123, 1130 (Pa. 2018). Natal filed his *pro se* petition promptly after his counseled petition for leave to file a petition for allowance of appeal *nunc pro tunc* was denied and we conclude we have jurisdiction over the merits of his claims.

### III.

On appeal, Natal argues that the PCRA court erred in dismissing his petition without a hearing.[8] He contends that his counsel was ineffective for

_____

[7] Moreover, any *pro se* petition Natal could have filed would have been rejected as a legal nullity. **See Commonwealth v. Willis**, 29 A.3d 393, 400 (Pa. Super. 2011).

[8] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." **Commonwealth v. Weimer**, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Id.** (citation omitted). "[A] PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact; that
*(Footnote Continued Next Page)*

failing to challenge the weight of the evidence and the discretionary aspects of his sentence, failing to call certain witnesses at trial, and failing to appeal the denial of a defense motion. No relief is due.

"To prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Sarvey*, 199 A.3d 436, 452 (Pa. Super. 2018). [F]ailure to prove any of these prongs is sufficient to warrant dismissal of the claim without discussion of the other two." *Commonwealth v. Robinson*, 877 A.2d 433, 439 (Pa. 2005) (citation omitted). Counsel cannot be ineffective for failing to pursue a meritless claim. *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). Finally, we presume that counsel has rendered effective assistance. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015).

**A.**

First, Natal argues that his counsel was ineffective for failing to file a post-sentence motion challenging the weight of the evidence and the discretionary aspects of his sentence. He claims that both issues would have

_____

the defendant is not entitled to post-conviction collateral relief; and that no legitimate purpose would be served by further proceedings." *Commonwealth v. Brown*, 161 A.3d 960, 964 (Pa. Super. 2017) (citations omitted).

entitled him to relief on appeal so he was prejudiced by counsel's failure to preserve them for review in the trial court. We disagree.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."[9] *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Akhmedov*, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

The PCRA court, which sat as fact-finder at Natal's trial, concluded that a post-sentence motion challenging the weight of the evidence would have

---

[9] These standards apply even when the trial court sits as fact-finder. *See*, *e.g.*, *Commonwealth v. Konias*, 136 A.3d 1014, 1023 (Pa. Super. 2016).

been unsuccessful.[10]   PCRA Court Opinion, 3/25/21, at 9.   Natal highlights minor inconsistencies in G.F.'s statements immediately after the assault and later during the investigation, the failure to immediately report the crime to police, and Martin's testimony that she was unable to find the condom in the trash on the morning after the assault.   However, the PCRA court weighed the credibility of the various witnesses, including Natal and Martin, in reaching its verdict and crediting G.F.'s testimony.   Upon review, we may not reweigh the evidence and we find no abuse of discretion in the PCRA court's determination. Because this claim is meritless, counsel could not be ineffective for failing to preserve it in a post-sentence motion.   *Rykard*, *supra*.

Next, Natal claims that counsel was ineffective for failing to file a post-sentence motion challenging the discretionary aspects of his sentence, waiving the issue for appellate review.   He contends that the trial court did not adequately consider mitigating factors presented at sentencing, and that his standard-range sentence of 6 to 15 years of incarceration, followed by 15 years of probation, is unreasonable under the circumstances.   Specifically, he argues that he has a young son, was a caretaker to his mother and siblings,

---

[10] When evaluating a challenge to the weight of the evidence to support a conviction, this Court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion.   *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).   A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial."   *Id.* (citation omitted).

participated in programs while incarcerated, was employed prior to his arrest, and suffers from seizures, insomnia and post-traumatic stress disorder.

It is well-settled that a challenge to the discretionary aspects of a sentence must present a substantial question for review.[11] "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Clarke*, 70 A.3d 1281, 1286–87 (Pa. Super. 2013) (citation omitted). "[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (citation omitted, alteration in original).

Natal's bald assertion that the trial court failed to give adequate consideration to mitigating factors does not present a substantial sentencing question for our review. *Id.* As a result, any challenge to the discretionary aspects of his sentence on direct appeal would have been meritless and

_____

[11] Natal did not include the required statement pursuant to Pa. R.A.P. 2119(f) in his brief on appeal. However, because the Commonwealth has not objected to this omission, we decline to find waiver and proceed to consider whether he has presented a substantial question. *Commonwealth v. Spenny*, 128 A.3d 234, 241 (Pa. Super. 2015).

counsel could not have been ineffective for failing to pursue this claim. **_Rykard_**, **_supra_**.  No relief is due.

**B.**

Next, Natal claims counsel was ineffective for failing to call four witnesses at trial:  Andrea Natal (Andrea), Nelida Campos,[12] Emmelinda Cuevas (Cuevas) and Tabatha Pietre (Pietre).  Andrea's statement asserts that Natal is innocent and G.F. lied because she did not want her mother to learn that she was sexually active.  Cuevas' statement asserted that Natal had a good character and that she trusted him around her son.  It further stated that Cuevas had spoken to G.F. in 2018, after Natal's trial, and G.F. admitted that she fabricated the allegations because her mother wanted Natal to move out of their house.  Pietre, Natal's sister, wrote in her statement that Natal was a good brother, that she trusted him around her children and that she believed G.F. had been coached by her mother to lie.  On appeal, Natal argues without elaboration that these witnesses would have shifted the weight of the evidence at trial in his favor.  Natal's Brief at 25.

To succeed on a claim that counsel was ineffective for failing to call a witness at trial, a PCRA petitioner must establish:

---

[12] As noted by the Commonwealth and the PCRA court, Campos did, in fact, testify on Natal's behalf at trial to the facts set forth in her statement attached to the PCRA petition.  **_See_** Commonwealth's Brief at 19-21; PCRA Court Opinion, 3/25/21, at 13.  As such, we do not address Natal's claim related to this witness further.

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew, or should have known, of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Wantz*, 84 A.3d 324, 331 (Pa. Super. 2014) (citation omitted). When analyzing the prejudice prong under our standards for ineffectiveness, we must determine whether there is a reasonable probability that the outcome of the trial would have been different if the witness had testified. *Id.* at 333-34.

The PCRA court did not err in denying relief on this claim because Natal failed to plead and prove the required elements. None of the witness's statements establish that the witnesses were available to testify at trial or that trial counsel knew or should have known of their existence. *See Commonwealth v. Goodmond*, 190 A.3d 1197, 1202 (Pa. Super. 2018) (rejecting missing witness claim in PCRA petition when appellant failed to establish that trial counsel knew or should have known of the witnesses' existence). Trial counsel cannot be ineffective for failing to call these witnesses if he was unaware that they were able to testify for the defense. *Id.* at 331. Additionally, the sparse allegations in the petition did not establish that Natal was prejudiced by the omission of these witnesses. Natal merely claimed without further discussion that the proposed testimony would have shifted the evidence in Natal's favor. These bare assertions were insufficient to establish that Natal was prejudiced by the alleged ineffectiveness.

In addition, as the PCRA court recognized, Andrea's proposed testimony would have opened the door for the Commonwealth to introduce evidence of Natal's prior juvenile adjudication of delinquency for rape. PCRA Court Opinion, 3/25/21, at 13, 15-16. Andrea's statement avers that she believed G.F. was fabricating the allegations against Natal because she did not want her mother to learn that she was sexually active with other individuals. Andrea went on to state that she believed the allegations were fabricated because G.F. was "using the same story that a young boy had used in 2004 when he said that [Natal] raped him." Memorandum of Law in Support of Amended Petition for Relief Pursuant to the Post-Conviction Relief Act, 2/18/2020, Affidavit of Andrea Natal. Even if this testimony was admissible under an exception to the Rape Shield Law for evidence related to witness bias or credibility, *see Commonwealth v. Palmore*, 195 A.3d 291, 295 (Pa. Super. 2018), it would be reasonable for counsel to decline to introduce testimony that would have opened the door to evidence that Natal had previously been adjudicated delinquent of rape under factually similar circumstances.

Moreover, we agree with the PCRA court's conclusion that the proposed testimony from Cuevas and Pietre were not an admissible form of character evidence because they did not relate to Natal's reputation in the community. PCRA Court Opinion, 3/25/21, at 11-16 (citing Pa.R.E. 404 & 405(a)). Cuevas and Pietre both merely stated that they trusted Natal around their children

and believed he was a good person. *See Commonwealth v. Johnson*, 27 A.3d 244, 249-250 (Pa. Super. 2011) (holding that proposed testimony was not proper character evidence when witnesses did not testify about the defendant's reputation in the community but said that he was a good person and acted appropriately around children in the family). Even if these statements had been admitted as character evidence, the Commonwealth would have been permitted to impeach Cuevas and Pietre using Natal's juvenile adjudication for rape, an outcome that counsel could have reasonably sought to avoid. *See* Pa.R.E. 405(a)(1). Additionally, the alleged conversation Cuevas described with G.F. in her statement occurred in 2018, well after Natal's trial. Counsel could not have been ineffective for failing to present this evidence when it did not exist at the time of trial. As a result, Natal's claims related to the missing witnesses are meritless.

## C.

Finally, Natal argues that counsel was ineffective on direct appeal because he failed to appeal the denial of his pre-trial motion to introduce evidence of G.F.'s past sexual conduct at trial. As the PCRA court recognized, this pre-trial motion was granted and Natal did, in fact, introduce the evidence at trial. *See* PCRA Court Opinion, 3/25/21, at 16-17; Motion *in Limine* Order, 10/7/16. Accordingly, this claim is meritless.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/21