J-A08045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                               : PENNSYLVANIA
                                               :

            v.                                 :

JASON MICHAEL FRAZIER        :

          Appellant          : No. 616 WDA 2022

Appeal from the PCRA Order Entered April 25, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011969-2000

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:         **FILED: April 19, 2023**

Jason Michael Frazier (Frazier) appeals from the April 25, 2022 order of the Court of Common Pleas of Allegheny County (PCRA court) denying as untimely his fourth petition filed pursuant to the Post-Conviction Relief Act (PCRA).[1] We affirm.

**I.**

**A.**

We glean the following facts from the certified record. In the early morning hours of July 4, 2001, Sherdina Jones (the victim) was shot multiple times and killed on Kelly Street in Pittsburgh. Eight shell casings from a .22

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541 *et seq.*

caliber rifle were recovered from the scene and the murder weapon was found in a dumpster based on an anonymous tip a few weeks later. Law enforcement did not recover any additional cartridge casings from the scene. At trial, the Commonwealth presented expert testimony that the shell casings recovered from the scene of the shooting matched the rifle that was recovered from the dumpster. A .22 caliber bullet and a large fragment were additionally recovered from the victim's abdomen and shoulder, along with smaller fragments that the expert believed, but could not confirm, were of that same caliber. He testified that the bullet and large fragment were fired from the rifle recovered by law enforcement, but admitted that he could not say with certainty that the remaining fragments originated from that weapon.

The day prior to the murder, police had responded to a report of a different shooting on Bennett Street. They spoke to Frazier, who was the target of the shooting, and he said that "Kelly Street [was] responsible" and that "somebody [was] going to pay." N.T., 1/12 & 16/01, at 97. When police then interviewed Frazier about the shooting on Kelly Street the next day, he claimed that he was not in Pittsburgh at the time. However, after his arrest a few weeks later, he admitted that he had purchased the rifle, cut off the stock, and was driving down Kelly Street with a friend, Geoffrey Warren (Warren), at the time of the victim's shooting. He said that he spotted three men hiding in the bushes, told Warren to duck and then heard two shots. He claimed that Warren then grabbed the rifle and returned fire.

Later in the interview, Frazier ultimately admitted that he was the one who fired the rifle. He said that after he saw the men hiding, he pulled the rifle out of the backseat, propped it on the windowsill of the vehicle, and fired 11 shots at the men before driving away. At his trial, Frazier contended that he fired on the men in self-defense and the victim had been caught in the crossfire. The jury rejected this defense and found him guilty of first-degree murder[2] and this Court affirmed his judgment of sentence. ***Commonwealth v. Frazier***, 387 WDA 2001, at *25 (Pa. Super. Feb. 13, 2003) (unpublished memorandum).

**B.**

Since his conviction, Frazier has filed multiple PCRA petitions seeking relief based on after-discovered evidence. In his first PCRA petition, Frazier sought a new trial based on after-discovered evidence of six witnesses who corroborated Frazier's defense that other men fired at his vehicle, causing him to fear for his life, before Frazier fired back. ***Commonwealth v. Frazier***, 1624 WDA 2007, at *7-13 (Pa. Super. Mar. 10, 2008) (unpublished memorandum). We concluded that the affidavits were not timely obtained through due diligence, were merely corroborative of the self-defense theory he presented at trial, and would not have altered the outcome of the case. ***Id.***

---

[2] 18 Pa.C.S. § 2502(a).

In his second PCRA petition, Frazier presented two additional affidavits. One of the affidavits was from a new witness who identified Paul Pierce (Pierce) as the individual who first fired upon Frazier's vehicle. *Commonwealth v. Frazier*, 1869 WDA 2009, at *5 (Pa. Super. Feb. 28, 2014) (unpublished memorandum). The affidavit further alleged that Pierce, who was by that time deceased, had told the affiant he had killed the victim. *Id.* The second affidavit was produced by a witness who had submitted affidavits in support of Frazier's first PCRA petition. *Id.* at *8. We held that Frazier had not exercised due diligence with respect to either witness and that the affidavits merely rehashed facts regarding self-defense previously known to Frazier. *Id.* at *9-11.

In his third PCRA petition, Frazier once again submitted affidavits from three witnesses who averred that Pierce had confessed to shooting the victim and two additional witnesses who allegedly saw Pierce shoot at Frazier's vehicle. *Commonwealth v. Frazier*, 296 WDA 2015, at *5-7 (Pa. Super. Dec. 2, 2016) (unpublished memorandum). We concluded that Frazier had not exercised due diligence in uncovering the first three witnesses. *Id.* at *11-13. With regard to the final two witnesses, we held that Frazier had timely presented their affidavits but was nonetheless not entitled to relief because the affidavits were again merely cumulative of his self-defense claim and would not have altered the result of the trial. *Id.* at 15-16.

## C.

In the instant petition, Frazier again proffers affidavits from alleged witnesses to the shooting: Jesse Lumberger and James Hill. The affidavits differed from the prior witness affidavits in that they averred that after Frazier fled the scene, Pierce walked over to the victim and fired two shots into her abdomen as she lay on the ground. The PCRA court held an evidentiary hearing at which Lumberger and Hill testified, consistent with their affidavits, as follows:

> Mr. Lumberger testified that on the day [the victim] was killed, he was eleven years old and staying with his cousin, Mr. Hill, who lived on Kelly Street in Homewood. According to Mr. Lumberger, he and Mr. Hill (of a similar age to Mr. Lumberger) left Mr. Hill's house late in the evening to walk to a "girl Tiffany's house"—which was also on Kelly Street—so that they "could both have sex with her." Mr. Lumberger explained that after he and Mr. Hill departed from Tiffany's house and were walking back to Mr. Hill's house, they observed, among other things, Mr. Pierce emerge from some bushes and shoot [the victim] "like twice" in the stomach with a pistol/revolver. Mr. Hill provided testimony about the day of [the victim's] death and her shooting that was similar to the version of events advanced by Mr. Lumberger, i.e., among other things, he observed Mr. Pierce shoot [the victim] with a handgun.
>
> Mr. Lumberger further testified that he was currently serving a ten to twenty-year sentence for bank robbery and theft by unlawful taking, that he was on the eighth year of his term of incarceration, and that he had spent the majority of his prison time at SCI Somerset. According to Mr. Lumberger, Mr. Frazier is also incarcerated at SCI Somerset. Mr. Lumberger maintained that he had not talked to Mr. Frazier in detail and–in fact—did not really know him. Indeed, Mr. Lumberger claimed that he only came forward with his version of the events of July 4, 2000, after he (i)

- 5 -

encountered [Eddie] Green[3] in the SCI Somerset prison yard in the summer of 2019; (ii) explained to Mr. Green, whom he recognized as being with [the victim] at the time shots were fired on July 4, 2000, that he was also present at that time and saw Mr. Pierce shoot [the victim]; (iii) and was convinced by Mr. Green to assist Mr. Frazier by allowing Mr. Green to type up an affidavit for Mr. Lumberger's signature, which affidavit Mr. Lumberger signed and returned to Mr. Green, who apparently provided it to Mr. Frazier for his use in these proceedings. . . . Lumberger asserted that Mr. Frazier did not ask him to lie on his behalf, that he was not threatened to assist in these proceedings, and that no one offered to pay him for aiding Mr. Frazier.

Mr. Hill testified that he had been incarcerated at SCI Somerset since 2015 and that he also had a typed affidavit prepared for his signature in an attempt to assist Mr. Frazier in the above-captioned matter. According to Mr. Hill, he and Mr. Lumberger talked about Mr. Frazier and that they "should come forward and let them know like what really happened." Mr. Hill then explained that he "wrote [his] name and gave it to [Mr. Lumberger], and [Mr. Lumberger] brought [Mr. Hill] back an affidavit to sign[,]" which he did. Mr. Frazier, Mr. Hill testified, did not pay him for his testimony at the Hearing; and Mr. Hill also claimed that he was not threatened to prepare his affidavit or to testify.

PCRA Court Opinion, 8/3/22, at 6-7 (citations omitted, cleaned up).

The PCRA court ultimately dismissed Frazier's petition as untimely, explicitly concluding that Lumberger and Hill were not credible, that they "did not truthfully testify that they saw [the] shooting on July 4, 2000," and that "[t]hey also did not credibly testify that the information in their respective affidavits was accurate or that they disclosed their purported knowledge about

---

[3] Green had authored one of the affidavits Frazier submitted in support of his third petition. Green had averred that he was walking with the victim on the night of the shooting and that he saw Pierce fire at Frazier's vehicle.

- 6 -

Mr. Pierce's alleged involvement in [the victim's] killing in the way in which they testified or within one year of Mr. Frazier filing his October 2019 request for PCRA relief." *Id.* at 10. It observed that Frazier did not himself testify about how he obtained the newly-discovered facts, nor did he call Green as a witness to corroborate Lumberger and Hill's testimony. Accordingly, it found that Frazier had not met his burden of pleading and proving the timeliness exception and denied the petition. Frazier timely appealed and he and the PCRA court have complied with Pa. R.A.P. 1925.

## II.

Frazier raises two issues on appeal: whether the PCRA court erred by dismissing his petition as untimely and whether he is entitled to a new trial based on the after-discovered evidence set forth in the Lumberger and Hill affidavits.[4]

## A.

"A PCRA petition, including a second and subsequent petition, shall be filed within one year of the date the underlying judgment becomes final."

---

[4] "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted). However, whether a PCRA petition is timely filed is a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013) (citations omitted).

- 7 -

*Commonwealth v. Graves*, 197 A.3d 1182, 1185 (Pa. Super. 2018) (citation omitted); *see also* 42 Pa.C.S. 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

There is no dispute that Frazier's petition is facially untimely, as his judgment of sentence became final in 2003 when his petition for allowance of appeal was denied by our Supreme Court. 42 Pa.C.S. § 9545(b)(3). Because he did not file the instant petition until October 8, 2019, he must plead and prove one of the exceptions to the PCRA's timeliness requirements: that he was prevented from raising the claim earlier by government interference; that the claim is based on newly-discovered facts that could not have been ascertained earlier; or that the claim is predicated on a newly-recognized constitutional right. 42 Pa.C.S. § 9545(b)(1)(i)-(iii). In addition, a petitioner must file the petition raising the claimed exception within one year of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Frazier asserts that his petition is timely under the exception for newly-discovered facts. 42 Pa.C.S. § 9545(b)(1)(ii). The newly-discovered facts exception "does not require any merits analysis of the underlying claim." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (internal quotations and citation omitted). To establish timeliness pursuant to the newly-discovered facts exception, "the petitioner must establish only that (1) the

facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." **Id.** "Due diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." **Commonwealth v. Burton**, 121 A.3d 1063, 1071 (Pa. Super. 2015) (*en banc*). Finally, a petitioner may not merely present a new source of previously-known facts in order to satisfy the exception. **Commonwealth v. Marshall**, 947 A.2d 714, 720 (Pa. 2008).

Here, the newly-discovered fact was not merely that additional witnesses saw Pierce fire at Frazier, but rather that they allegedly saw him fire directly at the victim, causing her death, after Frazier had already fled the scene. Previous witnesses had averred that Pierce initiated the encounter and that Frazier merely fired back in self-defense. Accordingly, the "fact" that Frazier discovered through the Lumberger and Hill affidavits was distinct from those presented in prior petitions and the new affidavits were not merely newly-discovered sources of previously-known facts. **Marshall**, **supra**. Further, Lumberger and Hill were not previously identified as witnesses in the trial or numerous PCRA proceedings, and there is no indication in the record that Frazier should have been aware of their existence prior to when they provided him with their affidavits. **Cf. Commonwealth v. Smith**, 194 A.3d 126 (Pa. Super. 2018) (holding that petitioner did not exercise due diligence

to obtain witness's affidavit when pre-trial discovery indicated that witness had made a statement to police but petitioner did not request the statement or pursue affidavit for over 13 years).  Finally, Frazier filed the instant petition within one year of receiving the affidavits in August 2019.  Thus, without considering the veracity of the Lumberger and Hill affidavits, it appears Frazier has satisfied the elements of the newly-discovered facts exception.

However, the PCRA court resolved the question of timeliness on credibility grounds, concluding that because Lumberger and Hill were not truthful, Frazier had failed to prove that the exception applies to his claim. Though neither the PCRA court nor the parties have addressed this issue, our Supreme Court has remained equally divided in recent years as to whether credibility is relevant in assessing the newly-discovered facts exception. ***Commonwealth v. Fears***, 250 A.3d 1180, 1189-90 (Pa. 2021) (OISA); ***id.*** at 1201 (OISR).  Some Justices would hold that the veracity of the alleged fact goes only to the merits of the underlying claim rather than to timeliness, while others argue that the fact must be proven for the timeliness exception to apply.  ***See***, ***e.g.***, ***Commonwealth v. Blakeney***, 193 A.3d 350, 364 (Pa. 2018) (OISR) ("Substantiating the veracity of the fact upon which the claim is predicated is a question for merits review of the claim."); ***id.*** at 367 (OISA) ("Under this clear standard, a petitioner submitting a facially untimely PCRA petition has the burden to prove the new fact upon which his claim is

predicated."); *Commonwealth v. Robinson*, 204 A.3d 326, 343-44 (Pa. 2018) (OISR); *id.* at 354 (OISA).

In *Fears*, because the Court identified an "established disagreement on the topic of jurisdiction," it proceeded to address the merits of the claims notwithstanding the opinion in support of affirmance's holding that the petition was untimely. *Fears*, *supra*, at 1191. Here, because the PCRA court held an evidentiary hearing on the merits of Frazier's claims and issued an opinion detailing its credibility determinations, the record is sufficient to address the merits of Frazier's after-discovered evidence claim. Moreover, this Court may affirm a lower court's order on any legal basis appearing in the record. *Commonwealth v. Parker*, 249 A.3d 590, 595 (Pa. Super. 2021). Accordingly, we proceed to the merits of his claim.

**B.**

Recognizing that the PCRA court's credibility determinations may not be disregarded absent an abuse of discretion, Frazier contends that the PCRA court's conclusions are not adequately supported by the record. He contends that Lumberger and Hill made eye contact throughout the hearing, admitted when they did not know the answer to a question, and that their body language did not suggest that they were untruthful. He asserts that it would not be unusual for children to be out later at night on a holiday like the Fourth of July. He points out that their testimony cannot be considered self-serving, as they had no interest in the outcome of Frazier's case and no obligation to

come forward. Finally, he criticizes the PCRA court for stating that the ballistic evidence contradicted the testimony, as the evidence at trial did not conclusively establish that all bullet fragments recovered from the victim's body were fired from the rifle.

A petitioner is entitled to relief on an after-discovered evidence claim if he pleads and proves that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been produced." 42 Pa.C.S. § 9543(a)(2)(vi).

> A petitioner must establish that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Epps*, 240 A.3d 640, 653 (Pa. Super. 2020) (emphasis and citation omitted). The credibility of an after-discovered witness's evidence is central to the fourth prong of the test, as an incredible witness would not compel a different verdict if called at trial. *See Commonwealth v. Small*, 189 A.3d 961, 977 (Pa. 2018). The PCRA court, sitting as the fact-finder, is in the best position to evaluate the credibility and integrity of the after-discovered evidence and to assess its possible impact on the verdict. *Commonwealth v. Padillas*, 997 A.2d 356, 365-66 (Pa. Super. 2010).

After viewing Lumberger and Hill's testimony at the evidentiary hearing, the PCRA court found it to be wholly incredible. It did not believe that they

witnessed the shooting at all, let alone that they witnessed Pierce shoot the victim after Frazier had fled the scene. PCRA Court Opinion, 8/3/22, at 10. In assailing the PCRA court's conclusion, Frazier restates arguments that he presented to that court at the evidentiary hearing and in his written post-hearing brief. The PCRA court, thus, had the opportunity to consider these arguments before nonetheless concluding based on its own observations that Lumberger and Hill were not credible. While Frazier is correct that the trial evidence does not completely foreclose the possibility that the victim was killed by Pierce in the manner described by Lumberger and Hill,[5] the question of whether their testimony would have compelled a different verdict ultimately hinges on the credibility that the fact-finder would have assigned that testimony. *Small*, *supra*. As we discern no abuse of discretion or error of law in the PCRA court's rejection of the testimony, Frazier is not entitled to relief on his claim.

Order affirmed.

---

[5] The ballistics expert acknowledged the possibility that some of the smaller bullet fragments recovered from the victim were not fired from the rifle, as they could not be conclusively tested due to their size. He nonetheless maintained throughout his testimony that it was common for bullets to fragment when entering the body, and that it was likely that they originated from the same firearm. N.T., 1/12 & 16/01, at 158-59, 178-79, 183-84, 186-88.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2023